Attorney McGrady is here on behalf of the appellant. Attorney Blackburn is here on behalf of the appellee. Mr. McGrady, are you ready to proceed? I am, Your Honor. May it please the court? I guess I don't need to introduce myself. It seems I already know who I am. Frankly, for oral argument, I don't have a lot to say in this case. I think it's all been said in the briefs. I think this case swings upon whether the retirement plan of Nanette, who I represent, is considered to be equalizing, or whether it's not. I tried to point out in my briefs that I don't think the evaluation, as it is, as has been argued in the interview, was validly placed in the record. It was attached to a post-trial motion. I'm old school, so I don't know if I can speak about current practice. I don't think that's proper. I don't think it should be considered. But over and above that, if that is going to be what the appellee hangs his hat on, put it in a quill drawer. Split it up between the two parties. That's what my client would rather do, and get a fair share of the so-called tangible assets. You didn't ask for that, Mr. Alcorn. The Social Security issue came up, and was awarded to Mark. And at the time it was awarded to him, he had not been given benefits at that time. Subsequently, he was given benefits. It was after the Bruce was closed. It was in the post-trial that this was announced that he got that. Be that as it may, I understand the fact that he was awarded Social Security can't even be used for an offset. But that triggered me, in my post-trial memorandum or whatever you want to call it, to say give him the Social Security award, give her her retirement. Well, in addition to the post-trial arguments that were made in writing as directed by the court, didn't Mr. Godar include a valuation of the pension in this financial affidavit that was filed with the court prior to trial? Yes. Does that make it evidence? I don't think so. I don't think that's confident evidence to establish the value of the retirement. Did you object to that in the financial affidavit? I did not. But how often do you have to object? Well, what value did you place on the pension? My client had a letter that said $16,000, I believe. Did you introduce that at trial? No. Neither was introduced at trial. Did you include that in her financial affidavit? I don't think she put that in her financial affidavit. She may have. I don't remember. With the state is how she valued her pension when it asked for it on her financial state affidavit. Okay. I didn't consult that and I'm really not prepared to give you an answer to that. Now, at the arguments on the post-trial motion, on behalf of the manager, I did ask the judge to quill parole. It's in there, in my final argument on the post-trial motion. I said, why don't you just quill parole? In your motion to reconsider? Yes. That's different than your post-trial motions, or your post-trial memorandums, right? It was different, right. In my post-trial memorandum, pre-judgment memorandum, I asked for them to have to get her retired. I erroneously thought that since he got his social security, she should get that too. Then she got, for lack of a better word, she faced this unequal slam on the division of assets. I consulted with her and it's her wish just to quill parole. And that's the position we're taking right now. I see this as something that's permissive, that the legal system can't permit. We can reflect on things. Nothing's really final yet because we're here arguing. So, my position is this. It should be quill parole. There should be a more equitable division of the assets. And the trial judge, of course, has retired. So if the court does remand, I would ask that it do so with instructions. And that's all I have to say. Okay. Thank you, Mr. McGrady. Ms. Blackburn. I plead the court. We are here today. Godard v. Godard is a case with no minor children and really the only issues before the court being the issues of the division of the assets and debts. Mr. McGrady is correct that the largest discrepancy in my asset and debt calculation, his asset and debt calculation, is indeed the value of this SERS pension. I did a valuation, which I believe is a standard valuation, at least in the Fourth District, which is a valuation through the thin plan calculating system. I listed the value in Mr. Godard's financial affidavit, which he signed. It was also listed in my pretrial memorandum to the court, which are required to be filed 14 days prior to the time that we go to trial. And then subsequent, when I did my post-trial memorandum, I attached the actual calculation as a demonstrative exhibit so that the court could see how I actually arrived at that calculation. The actual SERS statement was submitted as evidence. It was actually my exhibit number 16, the actual form that we received from SERS when we submit a subpoena to them asking for them to provide us with a, basically, a restatement of all contributions from the party, all contributions from the state, and all interest. And, of course, when I received that from SERS, I knew from looking at it, because I've done this a number of times, that she's vested, which, of course, makes the value now an actuarial calculation and not just a simple return on contribution calculation. So that's why I then ran it through thin plan, which is standard procedure for myself. And I don't know how other attorneys do it. I can only tell you how I do it. I never presented the calculation as an exhibit because I don't have anybody who can testify, and my client can't testify to that actual calculation because he doesn't participate in the actual preparation of that calculation, which is why I always submit it as a demonstrative exhibit for the court to consider when it places a value on the pension. Now, my recollection of how the evidence came in and the memorandums that followed was that Mr. McGrady and his client took the position that, essentially, the pension had no value. They didn't list it with a value. I don't believe it was until we got to this stage was it actually presented that that pension had a value. And I think that the value that they used was the $16,000 value, which was the value of her contributions to that pension plan. It didn't include the state's contributions to the pension plan. It didn't include any interest. It was just a, this is how much my client contributed, and so this is how much should be attributable to the court when it divides those. I don't believe that that is the appropriate way to value a pension, and I, frankly, I've never seen anyone argue that that is the appropriate way to value a vested pension in the Fourth District. So, I believe my valuation that I presented to the court was an accurate valuation, or as accurate as it could be, and I believe that's what the court considered when the court determined how to divide this marital estate. Now, by my calculation, the marital estate's been divided 60-40, 60% in favor of Ms. Goddard and 40% in favor of my client, which, of course, I believe to be an equitable, excuse me, an equitable distribution. Now, with regard, excuse me, to the Quildrow issue, that issue came up for the first time, as I recall it, came up for the first time on the motions to reconsider, and when that was called to the attention of Judge Londergan, Judge Londergan's response was that he had considered all of the evidence, all of the exhibits, all of the values, all of the testimony, and he had determined that that is not how he wished to divide the marital estate. I can surmise that one of the reasons that he did not divide the marital estate that way is because what was being suggested by Mr. McGrady was, let's just Quildrow the SERS pension and give her half of the value of the marital residence, which I believe was valued at $104,000, so she wanted half of that as cash and give my client half of the future interest in this SERS pension. Well, my client is disabled. He's been disabled, I believe, since 2001, so I can only surmise that the court considered the fact that he was disabled and that he probably had no ability to pay her the $70,000 or a little more than $72,000 that would have been her interest in the marital residence, and so for the fact that that probably could not be done, the only way that we could accomplish the 50-50 division of this marital estate was to give her the entirety of her pension and therefore come to a reasonable, equitable division of the remaining assets and debts that were out there. Your Honor, the only thing that I can say to the court is I cannot find anything that suggests to me that what Judge Londergan did in this case was inequitable. I believe it was an equitable division. I believe that the judge considered all of the evidence that was presented to the court. The fact that there was an evaluation done on the other side, I don't believe that gets held against my client here at the appellate court, so we're asking this court to affirm the trial court's ruling in this case. I thank you. Thank you, Ms. Blackburn. Any rebuttal, Mr. McGrady? No, Your Honor. Okay. All right, well, the court will take this matter under advisement and be in recess.